**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL MARITIME CO., and CPW AMERICA CO., | ) ) ) | CASE NO. 1:16CV00924 |
| | ) | HON. JAMES S. GWIN |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| FEDERAL MARINE TERMINALS, INC., | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| FEDERAL MARINE TERMINALS, INC., | ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN INTERNATIONAL MARITIME CO., and CPW AMERICA CO., | ) ) ) | **SECOND AMENDED COUNTERCLAIM AGAINST AMERICAN INTERNATIONAL MARITIME CO. AND CPW AMERICA CO.** |
| Counter-Defendants. | ) | |

Defendant/Counter-Plaintiff, Federal Marine Terminals, Inc. ("FMT"), for its Second Amended Counterclaim against Plaintiffs/Counter-Defendants, American International Maritime Co. ("AIM") and CPW America Co. ("CPW"), states as follows:

1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1333 as this is a case of admiralty and maritime jurisdiction, as is more fully set forth herein, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.    Venue in this district is proper pursuant to the provisions of 28 U.S.C. § 1391(a)(2), because the incident which gives rise to this action occurred within this district

1

**EXHIBIT
1**

# COUNT I – BREACH OF CONTRACT
## (Against AIM)

3.     Defendant/Counter-Plaintiff, FMT, incorporates paragraphs 1 and 2, above, as if set forth in full, herein.

4.     On or about April 17, 2015, AIM entered into Rate Quote agreement No. 5661 with FMT for the performance of certain stevedoring and terminal services in connection with the discharge of piping from nine vessels respectively named, M/V BLUEWING, M/V GADWALL, M/V WIGEON, M/V CINNAMON, M/V GARGANEY, M/V REDHEAD, M/V BLUEBILL, M/V ELDER, AND M/V WHISTLER, in the Port of Cleveland. A true and accurate copy of Rate Quote agreement No. 5661 is attached hereto as Exhibit A.

5.     Curt Gauthé signed Rate Quote agreement No. 5661 on behalf of AIM, and was authorized to sign Rate Quote agreement No. 5661 on behalf of AIM.

6.     The "Terms and Conditions" page of Rate Quote agreement No. 5661 states:

*(For complete details, see FMT Marine Terminal Operator (MTO) schedule at <http://www.fmtcargo.com/>).*

- This rate quote, and its terms and conditions contained or incorporated herein, shall be deemed ACCEPTED by either signing and returning this rate quote or by the commencement of any services provided by FMT.

- Services provided herein shall be subject to the applicable port tariff as well as all terms and conditions of FMT's MTO Schedule published at www.fmtcargo.com and are fully incorporated herein. If a paper copy is required please contact FMT at the above phone number.

- Payment is due upon receipt of invoice, unless otherwise specified.

(See, Exhibit A, Page 3 of 3).

7.     The rate which FMT agreed to charge AIM for Stevedoring Unload Services, was based on representations made by Curt Gauthé of AIM as to the type of vessels to be used to transport the cargo to the Terminal, general logistics of the job, the

2

scope of the work to be performed, required equipment, and required dock and yard space, among other things.

8.     Most, if not all, of AIM's representations turned out to be false, in whole or in part.

9.     As a result of AIM's false representations, FMT experienced cost issues above and beyond the original, represented overall scope of the business, and upon which its Rate Quote was based.

10.     These issues included, but were not limited to: stow and vessel types that negatively impacted production; excessive inspection and repair requirements for space and time; slow delivery schedules; excessive dunnage and supply costs well beyond what was reasonably anticipated; the negative impact the operations had on other FMT and Port business; requirements for additional space within the Port to unload and store pipe.

11.     As a result of these issues, which served to greatly increase FMT's costs, on June 18, 2015, FMT sent a letter to Curt Gauthe of AIM advising that, "starting with the 5th vessel and continuing to program completion", an adjustment to the Basic Stevedoring Rate on Rate Quote No. 5661 would be made, increasing the rate by $3.00 per metric ton to $22.25 per metric ton.  The letter further provides that "All other terms and conditions of Rate Quote # 5661 will continue to apply". A true and accurate copy of the June 18, 2015 Letter agreement is attached hereto as Exhibit B.

12.     Thereafter, with knowledge of the increased rate, AIM presented additional vessels to FMT for discharge of cargo, and FMT charged AIM the increased rate set forth in Exhibit B.

13.     Item 6 of FMT's MTO, entitled "Collection for Services Rendered," states as follows:

    A.     Except as otherwise stated herein, charges are for the account of the party receiving the MTO services. Payment must be assured prior to release of the goods through any one of the following methods deemed satisfactory to the MTO.

        1.     Charges to be paid at the time of delivery, in cash until proper credit has been established with Federal Marine Terminals, Inc.

        2.     Charges advanced by the inland carrier picking up or delivering the cargo at the terminal.

        3.     Charged to the account of the party receiving the MTO services when prior arrangements have been made with the terminal.

    B.     All charges for any services, including stevedoring, rendered by the MTO for which credit is granted shall be due and payable upon receipt of invoice, without any setoff, compensation or counterclaim. A one and one-half percent per month service charge (18% per annum) will be made against any invoice that has not been paid in accordance with the terms previously set forth.

A true and accurate copy of FMT's MTO is attached hereto as Exhibit C.

14.     FMT has performed the stevedoring and related services set forth in Rate Quote agreement No. 5661.

15.     FMT has invoiced AIM for the services performed under Rate Quote agreement No. 5661, including as modified by the Letter of June 18, 2015, and including for storage charges for pipe that remains in FMT's Terminal, but there remains due and owing the sum of $185,313.94, plus interest.

**WHEREFORE**, Defendant/Counter-Plaintiff, Federal Marine Terminals, Inc., prays that judgment be entered in favor of Federal Marine Terminals, Inc. and against Plaintiff/Counter-Defendant American International Maritime Co., in the sum of $185,313.94, plus interest at the rate of 18% per annum, and that Federal Marine Terminals, Inc. be awarded court costs and attorney fees.

## COUNT II – CONTRIBUTION
### (Against AIM)

16.     Defendant/Counter-Plaintiff, FMT, incorporates paragraphs 1 and 2, above, as if set forth in full, herein.

17.     Prior to April 17, 2015, upon information and belief, CPW contracted with AIM to act on behalf of CPW in arranging for and securing certain stevedoring and terminal services in connection with the discharge of a cargo of coated and uncoated pipe ("the cargo") that was to be transported from a port in Greece to the Port of Cleveland, Ohio, aboard nine (9) vessels.

18.     On or about April 17, 2015, AIM entered into Rate Quote agreement No. 5661 with FMT for the performance of stevedoring and terminal services in connection with the discharge of the cargo from nine vessels, respectively named, M/V BLUEWING, M/V GADWALL, M/V WIGEON, M/V CINNAMON, M/V GARGANEY, M/V REDHEAD, M/V BLUEBILL, M/V ELDER, AND M/V WHISTLER (collectively, "the vessels"), in the Port of Cleveland. A true and accurate copy of Rate Quote agreement No. 5661 is attached hereto as Exhibit A.

19.     Curt Gauthé signed Rate Quote agreement No. 5661 on behalf of AIM, and was authorized to sign Rate Quote agreement No. 5661 on behalf of AIM.

20.     The "Terms and Conditions" page of Rate Quote agreement No. 5661 states in pertinent part:

> *(For complete details, see FMT Marine Terminal Operator (MTO) schedule at <http://www.fmtcargo.com/>).*
>
> - This rate quote, and its terms and conditions contained or incorporated herein, shall be deemed ACCEPTED by either signing and returning this rate quote or by the commencement of any services provided by FMT.
>
> - Services provided herein shall be subject to the applicable port tariff as well as all terms and conditions of FMT's MTO Schedule published at

www.fmtcargo.com and are fully incorporated herein. If a paper copy is required please contact FMT at the above phone number.

(See, Exhibit A, Page 3 of 3).

21.     AIM and/or CPW arranged for the carriage of the cargo aboard the vessels.

22.     AIM directed or otherwise instructed FMT as to what type of equipment was to be utilized during the discharge and handling of the cargo at the Port of Cleveland.

23.     AIM directed or otherwise instructed FMT as to the means and methods to be utilized for the discharge and handling the cargo at the Port of Cleveland.

24.     AIM represented to FMT that the cargo would be transported in vessels with box holds.

25.     The cargo was not transported in box holds, thus requiring different or additional equipment in order to discharge the cargo.

26.     The way in which some or all of the cargo was loaded and stowed into the holds of the vessels, including under the coamings, resulted in damage to some or all of the cargo.

27.     The way in which some or all of the cargo was loaded and stowed into the holds of the vessels, including under the coamings, resulted in the need for additional time, labor and/or equipment to discharge the cargo.

28.     Some or all of the equipment which AIM directed or instructed FMT to utilize for the discharge of the cargo was inadequate or otherwise not useful in discharging the cargo.

29.     Some or all of the equipment which AIM directed or instructed FMT to utilize for the discharge of the cargo caused or contributed to damage to the cargo.

30.     Some or all of the means and/or methods which AIM directed FMT to utilize in discharging the cargo resulted in damage to some or all of the cargo.

6

31.     Some or all of the equipment which AIM directed or instructed FMT to utilize for the handling of the cargo caused or contributed to alleged damage to the cargo.

32.     Some or all of the means and/or methods which AIM directed FMT to utilize in handling the cargo resulted in alleged damage to some or all of the cargo.

33.     To the extent FMT is found liable to Plaintiff CPW, which liability FMT denies, FMT will be entitled to judgment against AIM commensurate with the degree to which AIM is found to have contributed to the alleged damages of Plaintiff, CPW, under the general maritime law.

**WHEREFORE**, Defendant/Counter-Plaintiff, Federal Marine Terminals, Inc., prays that judgment be entered in favor of Federal Marine Terminals, Inc. and against Plaintiff/Counter-Defendant American International Maritime Co., as set forth herein, and that Federal Marine Terminals, Inc. be awarded court costs and attorney fees, and for such other and further relief as this Court deem just.

## COUNT III –CONTRACTUAL INDEMNITY
### (Against AIM)

34.     Defendant/Counter-Plaintiff, FMT, incorporates paragraphs 1 and 2, above, as if set forth in full, herein.

35.     On or about April 17, 2015, AIM entered into Rate Quote agreement No. 5661 with FMT for the performance of certain stevedoring and terminal services in connection with the discharge of piping from nine vessels respectively named, M/V BLUEWING, M/V GADWALL, M/V WIGEON, M/V CINNAMON, M/V GARGANEY, M/V REDHEAD, M/V BLUEBILL, M/V ELDER, AND M/V WHISTLER, in the Port of Cleveland. A true and accurate copy of Rate Quote agreement No. 5661 is attached hereto as Exhibit A.

36.   Curt Gauthé signed Rate Quote agreement No. 5661 on behalf of AIM, and was authorized to sign Rate Quote agreement No. 5661 on behalf of AIM.

37.   The Rate Quote agreement specifically incorporates FMT's Marine Terminal Operator Schedule ("MTO"), including all terms and conditions contained therein.

38.   Item 13 of the MTO, titled LIMITATION OF LIABILITY TO VESSELS AND INDEMNITY FROM VESSELS AND CARGO INTERESTS, provides in pertinent part:

A.   Limitation of Liability as to all Vessels and Indemnity from Cargo Interests for Damages Caused by Insufficiency of Packing

1.   In no event shall the MTO be liable for any damage to vessels in the loading, off-loading and/or unloading of cargo and all handling incident thereto that is caused directly, or indirectly, in whole or in part, by insufficiency in packing of the cargo and/or failure to supply proper handling instructions for the cargo. *The shipper, consignor, consignee and cargo owner shall defend, indemnify and hold harmless the MTO, its officers, agents and employees and all related entities and their officers, agents and employees from and against any and all claims, demands, actions, losses, and damages, including, but not limited to,* claims for personal injury or death, claims for loss of or damage to vessels, and *claims for property loss or damage of any kind or description*, including, but not limited to, pollution or environmental damage, *and all expenses, including attorney's fees and costs, arising from or in any matter related to any such claims, demands, actions, losses, and damages caused by or related to insufficiency of packing of the goods for loading, off-loading and/or unloading and all handling incident thereto and failure to supply proper handling instructions for the cargo.*

(Emphasis added).  See Exhibit C, hereto.

39.   AIM had a duty to properly load, stow, block, brace, package, and prepare the cargo so that it could withstand normal and reasonably foreseeable events incident to transportation and handling, and had a duty to provide FMT with proper handling instructions for the cargo.

40.   AIM breached this duty by:

a.   Improperly stowing, blocking, and bracing the cargo within the holds of the vessels so as to prevent alleged damage to the cargo during normal discharge operations;

8

      b.      Improperly packaging the cargo so as to prevent alleged damage to the cargo during normal discharge operations; and/or

      c.      Failing to provide FMT with proper handling instructions for the cargo.

41.     To the extent that any cargo was allegedly damaged during discharge from the vessels, handling by FMT, or loading of cargo onto trucks for transport, any such alleged damage was due to the cargo being improperly stowed, blocked, and/or braced within the holds of the vessels, and otherwise improperly packaged so as to prevent damage to the cargo during normal discharge operations, and the failure of AIM to provide proper handling instructions for the cargo.

42.     Pursuant to the terms of Item 13 of the FMT MTO, AIM has a duty to defend, indemnify and hold harmless FMT from any and all claims, losses and alleged damages of CPW caused by or related to the insufficiency of packaging of any of the pipe for loading, stowage, discharge and handling, and further for the failure of AIM to provide FMT with proper handling instruction for the cargo of pipe.

43.     FMT has tendered to AIM, the defense and indemnification of CPW's claims against FMT, but to date, AIM has failed or refused to defend and indemnify FMT, as required by the terms of the MTO.

**WHEREFORE**, Defendant/Counter-Plaintiff, Federal Marine Terminals, Inc., prays that judgment be entered in favor of Federal Marine Terminals, Inc. and against Plaintiff/Counter-Defendant American International Maritime Co., in the sum found to be due and owing to CPW America Co., if any, and attributable to alleged damages caused by or relating to insufficiency of packaging of any of the cargo of pipe for loading, stowage, discharge and handling, and further for the failure of AIM to provide FMT with proper handling instruction for the cargo of pipe; and

FMT further prays that judgment be entered in its favor compelling AIM to undertake the defense of CPW's claims against FMT for such alleged damages, including the payment of all attorney's fees, expenses and costs.

### COUNT IV –CONTRACTUAL INDEMNITY
### (Against CPW)

44.     Defendant/Counter-Plaintiff, FMT, incorporates paragraphs 1-2, and 35-37, above, as if set forth in full, herein.

45.     On or about April 17, 2015, AIM entered into Rate Quote agreement No. 5661 with FMT for the performance of certain stevedoring and terminal services in connection with the discharge of piping from nine vessels respectively named, M/V BLUEWING, M/V GADWALL, M/V WIGEON, M/V CINNAMON, M/V GARGANEY, M/V REDHEAD, M/V BLUEBILL, M/V ELDER, AND M/V WHISTLER, in the Port of Cleveland. A true and accurate copy of Rate Quote agreement No. 5661 is attached hereto as Exhibit A.

46.     Curt Gauthé signed Rate Quote agreement No. 5661 on behalf of AIM, and was authorized to sign Rate Quote agreement No. 5661 on behalf of AIM.

47.     The Rate Quote agreement specifically incorporates FMT's Marine Terminal Operator Schedule ("MTO"), including all terms and conditions contained therein.

48.     Plaintiff, CPW, at all times, was the consignee and owner of the cargo contained on the vessels.

49.     Pursuant to Item 4 of FMT's MTO, as consignee and owner of the cargo, CPW was a party receiving the MTO services.

50.     As a party receiving services, FMT's MTO is binding on CPW as an implied contract.

51.     Item 13 of the MTO, titled LIMITATION OF LIABILITY TO VESSELS AND

INDEMNITY FROM VESSELS AND CARGO INTERESTS, provides in pertinent part:

A.     Limitation of Liability as to all Vessels and Indemnity from Cargo Interests for
Damages Caused by Insufficiency of Packing

1.     In no event shall the MTO be liable for any damage to vessels in the loading, off-
loading and/or unloading of cargo and all handling incident thereto that is caused
directly, or indirectly, in whole or in part, by insufficiency in packing of the cargo
and/or failure to supply proper handling instructions for the cargo. *The shipper,
consignor, consignee and cargo owner shall defend, indemnify and hold harmless
the MTO, its officers, agents and employees and all related entities and their
officers, agents and employees from and against any and all claims, demands,
actions, losses, and damages, including, but not limited to,* claims for personal
injury or death, claims for loss of or damage to vessels, and *claims for property
loss or damage of any kind or description*, including, but not limited to, pollution
or environmental damage, *and all expenses, including attorney's fees and costs,
arising from or in any matter related to any such claims, demands, actions,
losses, and damages caused by or related to insufficiency of packing of the goods
for loading, off-loading and/or unloading and all handling incident thereto and
failure to supply proper handling instructions for the cargo.*

(Emphasis added).  See Exhibit C, hereto.

52.     CPW had a duty to properly load, stow, block, brace, package, and prepare the

cargo so that it could withstand normal and reasonably foreseeable events incident to

transportation and handling, and had a duty to provide FMT with proper handling instructions for

the cargo.

53.     CPW breached this duty by:

a.     Improperly stowing, blocking, and bracing the cargo within the holds of

the vessels so as prevent alleged damage to the cargo during normal discharge operations;

b.     Improperly packaging the cargo so as to prevent alleged damage to the

cargo during normal discharge operations; and/or

c.     Failing to provide FMT with proper handling instructions for the cargo.

54.     To the extent that any cargo was allegedly damaged during discharge from the

11

vessels, handling by FMT, or loading of cargo onto trucks for transport, any such alleged damage was due to the cargo being improperly stowed, blocked, and/or braced within the holds of the vessels, and otherwise improperly packaged so as to prevent damage to the cargo during normal discharge operations, and further for the failure of AIM to provide FMT with proper handling instruction for the cargo of pipe.

55.     Pursuant to the terms of Item 13 of the FMT MTO, CPW has a duty to defend, indemnify and hold harmless FMT from any and all claims, losses and alleged damages of AIM caused by or related to the insufficiency of packaging of any of the pipe for loading, stowage, discharge and handling, and further for the failure of CPW to provide FMT with proper handling instruction for the cargo of pipe.

56.     FMT has tendered to CPW, the defense and indemnification of AIM's claims against FMT, but to date, CPW has failed or refused to defend and indemnify FMT, as required by the terms of the MTO.

**WHEREFORE**, Defendant/Counter-Plaintiff, Federal Marine Terminals, Inc., prays that judgment be entered in favor of Federal Marine Terminals, Inc. and against Plaintiff/Counter-Defendant CPW America Co., in the sum found to be due and owing to American International Maritime Co.., if any, and attributable to alleged damages caused by or relating to insufficiency of packaging of any of the cargo of pipe for loading, stowage, discharge and handling, and further for the failure of CPW to provide FMT with proper handling instruction for the cargo of pipe; and FMT further prays that judgment be entered in its favor compelling CPW to undertake the defense of AIM's claims against FMT for such alleged damages, including the payment of all attorney's fees, expenses and costs.

Respectfully submitted,

**FEDERAL MARINE TERMINALS, INC.,**

By:____/s/ Shari L. Friedman_____
        Warren J. Marwedel
        William P. Ryan
        Shari L. Friedman
        Marwedel, Minichello & Reeb, P.C.
        303 West Madison Street, Suite 1100
        Chicago, Illinois 60606
        312.902.1600
        wmarwedel@mmr-law.com
        bryan@mmr-law.com
        sfriedman@mmr-law.com
        *Pro Hac Vice*

Carolyn M. Cole
Thompson Hine
3900 Key Tower
127 Public Square
Cleveland, OH 44114
216.566.5707
carolyn.cole@thompsonhine.com
*Local Counsel*